UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CAESARS ENTERTAINMENT CORPORATION, | : : : : | Civil Action No.: |
| Plaintiff, | : : : | |
| v. | : : : | |
| IUOE LOCAL 68 PENSION FUND, | : : | |
| Defendant. | : : | |

# COMPLAINT

Caesars Entertainment Corporation ("CEC" or "Plaintiff") brings this action against IUOE Local Pension Fund (the "Fund" or "Defendant") pursuant to Section 4221(b)(2) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA"), 29 U.S.C. § 1401(b)(2), to vacate the Amended Interim Award & Opinion of Arbitrator Norman Brand (the "Arbitrator") dated March 19, 2017 (the "Arbitration Award") and served on March 20, 2017, which found that CEC partially withdrew from the Fund on August 31, 2014, and that partial withdrawal triggered withdrawal liability under ERISA, as amended by the Multiemployer Pension Plan Amendment Act of 1980 (the "MPPAA").

## NATURE OF ACTION

1. Certain of CEC's affiliates entered into collective bargaining agreements with the Fund obligating those affiliates to make contributions to the Fund for work done at each of the affiliates' respective hotels and casinos located in Atlantic City, New Jersey.

2. One of those hotels and casinos, Showboat Atlantic City Operating Company, d/b/a Showboat Atlantic City ("Showboat"), closed on August 31, 2014, ceasing its operations and terminating the collective bargaining agreement between that particular affiliate and the Fund.

3. Since August 31, 2014, the other affiliates, subject to their respective collective bargaining agreements, continued to make contributions to the Fund for work their respective employees performed at their respective hotels and casinos. Thus, contributions for *all* work performed by employees of CEC's affiliates that remain open in Atlantic City have been, and continue to be, paid to the Fund by CEC's affiliates. In other words, each of CEC's remaining affiliates in Atlantic City are in full compliance with obligations to contribute to the Fund pursuant to its applicable collective bargaining agreement and no work is being performed by employees of CEC's remaining affiliates in Atlantic City that does not result in a contribution to the Fund.

4. Relying solely on the closure of Showboat and ignoring the CEC affiliates' satisfaction of their obligations to contribute, the Fund assessed CEC and its affiliates with joint and several liability for Showboat's purported withdrawal from the Fund.

5. CEC filed for arbitration of the dispute pursuant to Section 4221 of ERISA, 29 U.S.C. § 1401, 29 C.F.R. § 4221, and the withdrawal liability rules of the Fund. The Arbitrator found in favor of the Fund, holding that CEC and its affiliates are liable for the partial withdrawal of their closed affiliate. A copy of the Arbitration Award is attached hereto as **Exhibit A**.

6. The Arbitration Award is incorrect for two independent reasons, and this Court has jurisdiction to review the Arbitrator's legal conclusions *de novo*. *Crown Cork & Seal Co., Inc. v. Cent. States, S.E.& S.W.A. Pension Fund*, 982 F.2d 857, 860 (3d Cir. 1992)

7. *First*, under ERISA, the plan can assess withdrawal liability for a partial withdrawal in this situation only if Showboat continues to perform work "in the jurisdiction of the collective bargaining agreement." Here, the "jurisdiction" of the collective bargaining agreement is limited to Showboat itself. Contrary to the plain language of the collective bargaining agreement, the Arbitrator erroneously expanded the jurisdiction of the relevant collective bargaining agreement to all work performed by any CEC affiliate within Atlantic City, New Jersey.

8. *Second*, the Arbitrator erroneously ruled that ERISA and the MPPAA permitted the Fund to apply withdrawal liability to CEC and each of its affiliates that are in full compliance with all of its contribution obligations. Neither ERISA nor the MPPAA permits the Fund to collect withdrawal liability payments from CEC and those CEC affiliates that have made all of the payments that they are required to make to the Fund.

9. CEC has therefore filed this action pursuant to ERISA Section 4221(b)(2), 29 U.S.C. § 1401(b)(2), to ask this Court to vacate the Arbitration Award and order the Fund to return the interim withdrawal liability payments made by CEC and its affiliates.

## PARTIES

10. Plaintiff CEC is a Delaware corporation with its principal executive office located at One Caesars Palace Drive, Las Vegas, Nevada, and is an employer and a member of an employer "controlled group" as defined under ERISA and the MPPAA, as explained more fully below.

11. The Fund is a multiemployer pension plan as defined in Sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37), 1301(a)(3), and is administered at 14 Fairfield Place, West Caldwell, New Jersey.

## JURISDICTION AND VENUE

12. This court has jurisdiction under Sections 4221(b)(1)(2) and 4301(c) of ERISA, 29 U.S.C. §§ 1401 and 1451, as well as under 29 U.S.C. § 1331.

13. Venue is proper in this district under Section 4301(d) of ERISA, 29 U.S.C. § 1451(d), because the Fund is administered within the District of New Jersey.

## FACTUAL BACKGROUND

### A. Multiemployer Pension Plans May Only Assess Partial Withdrawal Liability As Provided By ERISA

14. Under ERISA, as amended by the MPPAA, employers may make monetary contributions to one or more multiemployer pension plans on behalf of their employees who belong to a participating union. ERISA § 4212(a), 29 U.S.C. § 1392(a).

15. When an employer terminates its participation in—or withdraws from—a multiemployer pension plan either "complete[ly]" or "partial[ly]", the employer may be liable to that plan in an amount calculated pursuant to specified statutory formulae ("Withdrawal Liability"). ERISA § 4201, 29 U.S.C. § 1381.

16. "[A] *complete withdrawal* from a multiemployer plan occurs when an employer—(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." ERISA § 4203(a), 29 U.S.C. § 1383(a) (emphasis added).

17. "[T]here is a *partial withdrawal* by an employer from a plan on the last day of a plan year, if for such plan year—(1) there is a 70-percent contribution

decline, or (2) there is a *partial cessation* of the employer's contribution obligation." ERISA § 4205(a), 29 U.S.C. § 1385(a) (emphasis added).

18.     "Partial cessation" occurs if, during the year of the purported partial withdrawal,

>   (i)     the employer permanently ceases to have an obligation to contribute under one or more but fewer than all collective bargaining agreements under which the employer has been obligated to contribute under the plan but continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required or transfers such work to another location or to an entity or entities owned or controlled by the employer, or
>
>   (ii)    an employer permanently ceases to have an obligation to contribute under the plan with respect to work performed at one or more but fewer than all of its facilities, but continues to perform work at the facility of the type for which the obligation to contribute ceased.

ERISA § 4205(b)(2)(A), 29 U.S.C. § 1385(b)(2)(A).

19.     However, "a cessation of obligations under a collective bargaining agreement shall not be considered to have occurred solely because, with respect to the same plan, one agreement that requires contributions to the plan has been substituted for another agreement." ERISA § 4205(b)(2)(B), 29 U.S.C. § 1385(b)(2)(B).

20.     Thus, for an employer to be assessed with partial Withdrawal Liability under ERISA for partial cessation, (a) an employer must either (i) continue to

perform the same type of work within the terminated agreement's jurisdiction, or (ii) transfer the same work to another location, *and* (b) the employer must cease making contributions to the multiemployer pension plan attributable to that work. *See* ERISA § 4205(b)(2), 29 U.S.C. § 1385(b)(2).

21. The mere cessation or termination of one of the employer's operations, without more, is insufficient to trigger Withdrawal Liability under ERISA. *See id.* The employer must have also shifted that work to another location where the employer is not obligated to contribute to the Plan.

22. For purposes of ERISA, the MPPAA, and withdrawal liability assessment, "all . . . trades or businesses . . . under common control" may be treated as a "single employer" such that "each member of such a group is liable for the withdrawal of any other member of the group." ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1).

23. Common control is found, among other ways, where one entity has a "controlling interest" in a corporation in the form of 80% or more (by value or voting power) [ownership] of the corporation's stock." 26 C.F.R. § 1.414(c)-2(b)(2)(A).

24. Any dispute between an employer and a multiemployer pension plan regarding an assessment of withdrawal liability is subject to arbitration. ERISA § 4221(a)(1), 29 U.S.C. § 1401(a)(1). "Upon completion of the arbitration

proceedings in favor of one of the parties, any party thereto" may bring an action "to . . . vacate . . . the arbitrator's award" in the appropriate federal district court. ERISA § 4221(b)(2), 29 U.S.C. § 1401(b)(2). Legal conclusions in these arbitration awards are reviewed *de novo*. *Crown Cork & Seal Co., Inc.*, 982 F.2d at 860.

### B. CEC And Certain Of Its Affiliates Made, And Continue To Make, Contributions To The Fund

25. CEC is one of several related entities that comprise a "single employer" within the meaning of ERISA, as amended by the MPPAA, due to ownership interests some of the group members have in other group members. The other members include: Caesars Entertainment Resort Properties, Inc. ("CERP"), Caesars Entertainment Operating Company, Inc. ("CEOC"), Bally's Park Place, Inc., d/b/a Bally's Hotel and Casino ("Bally's AC"), Boardwalk Regency Corporation d/b/a Caesars Atlantic City ("Caesars AC"), Harrah's Operating Company, Inc., d/b/a Harrah's Atlantic City Casino and Hotel ("Harrah's AC"), and Showboat (together with CEC, CERP, CEOC, Bally's AC, Caesars AC, and Harrah's AC, the "CEC Controlled Group").[1]

---

[1] CEC has a greater than 80% control interest in CERP and CEOC. CEOC has a control interest in Caesars AC and Bally's AC and had a control interest in Showboat before it closed on August 31, 2014. CERP has a control interest in Harrah's AC.

26. Showboat, Caesars AC, Bally's AC, and Harrah's AC each have separate collective bargaining agreements with the Fund, which govern, among other things, contributions to be made to the Fund.

27. Although the CEC Controlled Group is a single employer under ERISA, the collective bargaining agreements are more specific, defining the term "Employer" to include only the relevant member entity subject to the particular agreement.

28. For example, the collective bargaining agreement between the Fund and Showboat (the "Showboat CBA") defines "Employer" as "SHOWBOAT ATLANTIC CITY OPERATING COMPANY, Delaware Avenue and Boardwalk, Atlantic City, NJ, 08401." A copy of the Showboat CBA is attached as **Exhibit B**.

29. Similarly, the collective bargaining agreement between the Fund and Caesars AC defines "Employer" as "CAESARS ATLANTIC CITY, Arkansas Avenue and Boardwalk, Atlantic City, NJ, 08401." A copy of the Caesars AC CBA is attached as **Exhibit C**.[2]

30. Each of these collective bargaining agreements also includes the following two provisions, obligating the specified "Employer" to make contributions to the Fund in accordance with ERISA:

> Employer recognizes the Union as the sole and exclusive collective bargaining representative of the following

---

[2] See also Bally's AC CBA attached as **Exhibit D** and Harrah's AC CBA attached as **Exhibit E**.

>employees employed by the Employer in Atlantic City, New Jersey.

*See, e.g.*, Showboat CBA art. I (the "Recognition Provision").

>The Employer agrees to make contributions to the Union Pension Fund as per "Schedule A" [which sets forth wage rates and hourly pension contribution rates for the specific "Employer" under the particular collective bargaining agreement].

*See, e.g., id.* art XII ¶ 2

31. Pursuant to these contractual obligations, Showboat, Caesars AC, Bally's AC, and Harrah's AC made contributions to the Fund.

32. On August 31, 2014, Showboat closed, terminating the Showboat CBA and Showboat's obligation to contribute to the Fund.

33. Since the date of Showboat's closure, (i) no member of the CEC Controlled Group has performed any type of work covered by the Showboat CBA that would have given rise to an obligation to make contributions pursuant to the Showboat CBA (if it were still in effect), and (ii) Caesars AC, Bally's AC, and Harrah's AC have continued to fulfill each of its specific collective bargaining agreements, including by making contributions to the Fund in an aggregate amount of no less than $2.25 million for work performed pursuant to their respective collective bargaining agreements.

### C. The Fund Improperly Assesses CEC With *Complete* Withdrawal Liability After Showboat Closes

34. Notwithstanding the CEC Controlled Group's continued contributions, on or about March 11, 2016, the Fund assessed CEC with Withdrawal Liability for an alleged ***complete*** withdrawal arising from Showboat's closure. A copy of the Fund's Withdrawal Liability Assessment is attached as **Exhibit F**.

35. On or about May 3, 2016, CEC disputed the Fund's Withdrawal Liability assessment, asserting that Showboat's closure and the termination of the Showboat CBA did not cause a complete withdrawal from the Fund because the other members of the CEC Controlled Group (which altogether form a "single employer") continue to contribute to the Fund—precluding any finding that obligations or operations have "permanently cease[d]". *See* ERISA § 4203(a), 29 U.S.C. § 1383 ("[A] complete withdrawal occurs when an employer—(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan."). A copy of CEC's dispute letter is attached as **Exhibit G**.

36. On or about May 27, 2016, the Fund rejected CEC's argument that a complete withdrawal did not occur and further claimed that CEC and the other members of the CEC Controlled Group were jointly and severally liable for the

purported complete withdrawal triggered by Showboat's closure. A copy of the Fund's May 27, 2016 correspondence is attached as **Exhibit H**.

### D. CEC Demands Arbitration To Resolve The Withdrawal Liability Dispute

37. On or about July 13, 2016, CEC, on behalf of the CEC Controlled Group, sent a letter to the American Arbitration Association ("AAA") and the Fund timely demanding arbitration of the withdrawal liability dispute.

38. The issue originally presented for arbitration was whether the CEC Controlled Group had completely withdrawn from the Fund.

39. During the Arbitration, the Fund changed its position, arguing in the alternative to its complete withdrawal argument that CEC *partially* withdrew as a result of the Showboat closure. The Fund, CEC, and the Arbitrator agreed to address both issues of complete and partial withdrawal in the arbitration to fully resolve the parties' dispute.

40. On or about February 28, 2017, the AAA notified CEC and the Fund of the Arbitrator's Interim Award dated February 27, 2017, and provided each party a copy.

41. On or about March 7, 2017, CEC filed a Motion for Reconsideration of the Arbitrator's Interim Award, but the Arbitrator rejected the motion.

### E. The Arbitrator Incorrectly Rules That The CEC Controlled Group Is Liable For Partial Withdrawal Liability

42. On March 20, 2017, the AAA notified CEC and the Fund of the Arbitrator's amended Arbitration Award, which rejected the Fund's complete withdrawal argument but upheld the Fund's assessment of partial Withdrawal Liability against the CEC Controlled Group.

43. The Arbitrator incorrectly held that the closure of Showboat AC was a *partial cessation* under ERISA triggering withdrawal liability against the CEC Controlled Group as a result of *partial withdrawal*. Pursuant to ERISA Section 4205(b)(2)(A)(i), 29 U.S.C. § 1385(b)(2)(A)(i), a partial cessation occurs when:

> the employer permanently ceases to have an obligation to contribute under one or more but fewer than all collective bargaining agreements under which the employer has been obligated to contribute under the plan but continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required or transfers such work to another location or to an entity or entities owned or controlled by the employer.

44. To reach this conclusion, the Arbitrator incorrectly found that the "jurisdiction" of the Showboat CBA covers any work performed in Atlantic City, New Jersey. The Recognition Provision of the Showboat CBA, however, provides that "Employer recognizes the Union as the sole and exclusive collective bargaining representative of the following employees employed by the Employer in Atlantic City, New Jersey." Showboat CBA art. I. *See* Arb. Award at 12-13.

45. The Arbitrator made at least two fundamental errors of law in finding that the "jurisdiction" of the Showboat CBA extends to all operations of CEC and its affiliates in Atlantic City, New Jersey.

46. *First*, the Arbitrator's jurisdiction-related holding directly conflicts with the plain language of the Showboat CBA. The Recognition Provision of the Showboat CBA on which the Arbitrator relies limits the Atlantic City, New Jersey geographic reference to only the work of "employees employed by the *Employer*." Showboat CBA, art. I. The Showboat CBA defines "Employer" with the more specific geographic location of the former Showboat hotel and casino: "SHOWBOAT ATLANTIC CITY OPERATING COMPANY, Delaware Avenue and Boardwalk, Atlantic City, NJ, 08401." Showboat CBA, Preamble. Thus, the Recognition Provision refers only to Showboat, not the CEC Controlled Group as a whole. In other words, the Showboat CBA's jurisdiction provision is limited to Showboat itself, not Atlantic City.

47. Showboat—the "Employer" under the Showboat CBA—has closed and no longer exists, precluding any work being done by "employees of the Employer" under the Showboat CBA at the Showboat hotel and casino in Atlantic City, New Jersey. Consequently, there can be no work performed within the jurisdiction the Showboat CBA covers.

48. *Second*, regardless of the breadth of jurisdiction under the Showboat CBA, the Arbitrator's finding of partial cessation is unsupported by the law. This case falls squarely within the express provisions of ERISA, prescribing that no partial cessation exists where—as here—an employer closes one operation and continues other operations covered by other collective bargaining agreements under which contributions are made to the same multiemployer pension plan. *See* ERISA § 4205(b)(2)(B), 29 U.S.C. § 1385(b)(2)(B).

49. The purpose of this statutory limit on the reach of ERISA's Withdrawal Liability is to prevent employers from being punished solely as a result of terminating one of its operations. A purpose that has been completely lost, and indeed flatly undermined, by the Arbitrator's erroneous decision.

50. Under ERISA, an employer cannot be assessed with Withdrawal Liability based on partial cessation unless the employer actually ceases making contributions to a multiemployer pension plan while work is still being performed by its employees covered by the plan. See ERISA § 4205(b)(2)(A)(i), 29 U.S.C. § 1385(b)(2)(A)(i); *see also* **Exhibit I**, Opinion, Pension Benefit Guaranty Corporation 83-20, dated September 2, 1983. That simply has not happened here.

51. It is undisputed that the CEC Controlled Group is contributing for *all* work performed under the remaining collective bargaining agreements with the Fund, and that there is *no* work being performed for which the CEC Controlled

Group is not contributing or is no longer obligated to contribute to the Fund (*i.e.*, at the Showboat hotel and casino).

### COUNT I – VACATUR OF ARBITRATION AWARD

52. CEC realleges paragraphs 1-52 as though fully set forth herein.

53. CEC files this petition to vacate the Arbitration Award after having fully exhausted the statutory alternative dispute resolution procedures provided in ERISA.

54. This action is timely under ERISA Section 4221(b)(2), 29 U.S.C. § 1401(b)(2) and 29 C.F.R. § 4221.9.

55. The Arbitrator made several clear errors of law described herein and issued an Arbitration Award that violates ERISA, as amended by the MPPAA and/or the relevant collective bargaining agreements. This Court should review these errors of law *de novo*.

56. Plaintiff has been injured by the Arbitration Award because it has been forced to pay Withdrawal Liability payments that are not permitted under ERISA.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) vacate the Arbitration Award;

(b) enter a judgment in Plaintiff's favor ordering the Fund to refund all withdrawal liability payments made by CEC to the Fund, with interest as required by 29 C.F.R. § 4219.31(d);

      (c)    award Plaintiff its attorneys' fees, expenses and costs in connection with this action; and

      (d)    order such other, further, or different relief to the Plaintiff as the Court deems just and proper.

## **LOCAL CIV. RULE 11.2 CERTIFICATION**

By signing below, counsel for CEC affirms that the within matter in controversy is not the subject of any other action pending in any court or any other pending arbitration or administrative proceeding.

Date:  April 10, 2017
New York, New York

Respectfully submitted,

/s/Stephanie L. Gal_____

Brian T. Carney (*pro hac vice forthcoming*)
Stephanie L. Gal
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
(212) 872-1000
sgal@akingump.com
bcarney@akingump.com

Lawrence D. Levien (*pro hac vice forthcoming*)
Eric D. Field (*pro hac vice forthcoming*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Ave., NW
Washington, DC 20036
(202) 887-4000
llevien@akingump.com
efield@akingump.com

*Attorneys for Plaintiff Caesars Entertainment Corporation*